[File No. 6024.]

STATE OF NORTH DAKOTA for Itself and on Behalf of All Creditors of the Defendant Bank, Respondent, v. MECKINOCK STATE BANK of Meckinock, North Dakota, a Closed Banking Corporation, Appellant.

(241 N. W. 293.)

Opinion filed February 18, 1932.

Messrs. *Thoresen & Paletz,* for appellant.

*Hon. James Morris,* Attorney General, and *Zuger & Tillotson,* for respondent.

BURR, J. . The Meckinock State Bank was closed by the banking department in July, 1931. Under the provisions of chapter 96 of the Session Laws of 1931 the receiver of closed banks was appointed to take over its assets, and thereafter the bank was declared to be insolvent.

This proceeding involves the construction of § 51 (u) of chapter 96 of the Session Laws of 1931. Section 51 (u) of this Act provides, among other things:

"When any bank shall be closed and taken charge of by the receiver as provided for herein, or while proceedings are pending for taking charge thereof hereunder, articles of agreement and a plan for liquidation by a liquidating committee may be submitted to the State Examiner. Such plan must, among other things, contain the names of six persons who may or may not be depositors, from among whom, if the application is granted by the court as hereinafter provided, the Court may select three to act as such liquidating committee. There shall also be submitted with such plan and articles of agreement and [?] the consent in writing of all of such proposed members of the liquidating committee to act on such committee if selected by the court. It shall be the duty of the State Examiner to act in an advisory capacity to the persons interested in the plan. He shall pass upon the feasibility and practicability of the same, and either approve or disapprove thereof. If he disapproves the plan, it shall be his duty to formulate and present in lieu thereof an agreement and plan which meets with his approval.

"Such agreement and plan so approved by the State Examiner shall thereupon be by the applicants presented to the deposit creditors of such bank for execution by each depositor in person, or by his representative holding a power of attorney to act in the premises, sworn to before a Notary Public or other officer empowered to administer oaths, which power of attorney shall accompany such agreement and plan. When deposit creditors thereof, representing not less than eighty per cent of the amount of deposits of such bank exclusive of public money

secured by indemnity bonds or otherwise, and also exclusive of deposits of less than twenty-five dollars each, have executed said articles of agreement and plan for liquidation, all other unsecured depositors shall be held subject to such agreement and all the terms thereof to the same extent and effect as if they had joined in its execution, and the same may be presented to the Court Commissioner or judge of the district court designated by the Supreme Court as hereinbefore provided, together with an application to have the liquidation of the said bank withdrawn from the receivership and vested in a liquidation committee. Such Court Commissioner or district judge, as the case may be, shall thereupon make an order fixing a time and place for the hearing of such application, which hearing shall be held in the town where such bank is located. Ten days' notice of such hearing, containing a statement of the purpose, time and place thereof, must be given by the applicants by registered mail to the receiver of such bank, to the State Examiner and to each deposit creditor shown of record on the books of the bank at the time of closing, and for the purpose hereof such records shall be by the receiver of such bank made available to the applicants upon demand.

"Upon the hearing the Court shall advise itself fully in regard to the status of the existing receivership, the feasibility of the proposed plan, the competency of the proposed members of the liquidating committee and its several members to act in the proposed capacity, and it shall have the power to select three persons from the names submitted in such plan and articles of agreement to act as a liquidating committee, and to prescribe the terms and conditions upon which the liquidation of the affairs of such bank will be transferred from the receivership to such committee. It may also permit the applicants, with the consent of the State Examiner, to modify or amend the said proposed plan of liquidation. If no good reason is presented why the application as originally made or as amended should not be granted, the Court must make its order appointing three persons from among the names submitted with said plan, to act as joint receivers of said bank in the place and stead of the existing receiver, prescribe the amount of the bond, if any, which they should be required to give upon qualifying as receivers, and the manner of their reporting and accounting to the Court, directing the existing receiver to account to them

and turn over all of the assets of the receivership, first deducting the proper expense and charges for administration of the receivership up to such time, the amount thereof to be agreed upon between the existing and the new receivers, or in case of disagreement to be settled by the Court; but the failure of the parties to so agree shall not delay the transfer of the assets and effects to the new receivers, except such thereof as are claimed by the old receiver as compensation, as aforesaid, and the correctness of such claim shall be subsequently determined by the Court."

In accordance with these provisions the requisite number of depositors agreed upon a plan for "liquidation by depositors." It is conceded that the same, in all respects, complies with the provisions of the statute just quoted. In due time, a plan approved by the State Examiner was "presented to the ——————— Judge of the District Court designated by the Supreme Court as hereinbefore provided, together with an application to have the liquidation of the said bank withdrawn from the receivership and vested in a liquidation committee," and the names of six persons to act as the liquidating committee were submitted to the court.

The District Judge set a time and place for the hearing, the required notice was given, the hearing had, and the court made findings of fact showing; that the depositors had proposed a plan of liquidation which had been submitted to the State Examiner, "who thereupon approved the feasibility and practicability of said plan of liquidation and articles of agreement;" that these articles had been "executed by deposit creditors of said bank representing not less than 80 per cent of the deposits of the said bank, exclusive of public moneys secured by indemnity bonds or otherwise, and also exclusive of deposits of less than $25 each;" that the bank "was closed as insolvent and L. R. Baird was appointed receiver" and entered upon his duties as receiver and ever since "has given the affairs of said bank an efficient administration, having collected assets, including a considerable portion of the statutory liability of stockholders, renewed and obtained further security for loans and bills receivable of said bank, and now has on hand sufficient money to pay depositors who have made proof of their claims a dividend of 10 per cent and upwards; and further, that said Receiver has instituted an action in the Minnesota courts against one

of the stockholders enforcing said statutory liability which action is now pending;" that five of those persons named by the depositors as suitable for the liquidating committee were examined "as to their financial worth, business ability and integrity to act as such joint receiver;" that these "said persons are financially worthy and that they are upright and honest men;" that, however, they "have not had any experience in the liquidation of a bank or of any other monetary institution, have never acted as receivers; have not had any active experience in operating any business of any kind, except farming or of laborer; and that in so far as the business ability of said persons is concerned the court feels they will be wholly unable to give to this bank and to the creditors such an active efficient administration as would be requisite and necessary to protect the interests of the depositors, and that if appointed the interests of the depositors of said bank will be exposed to hazards detrimental to such interests. On the other hand, the court finds that the best interests of the creditors of said bank will be very much more satisfactorily served by the said L. R. Baird as Receiver than by the persons so elected by the said depositors creditors thereof," that the sixth person named did not appear at the hearing "and the court had no means of determining his qualifications other than that he was at one time cashier of said bank."

An order was made denying the petition "but without prejudice to the selection by the depositors of said bank of other qualified persons from whom the court may make selection as required by law."

It is apparent therefore that the district judge had no fault to find with the plan proposed except that he believed it better to leave liquidation with the general receiver, and he was not satisfied as to the ability of any three of the six persons proposed as a liquidating committee.

The depositor creditors appeal asking a review of the order of the district court denying the petition, and allege among other things that the court erred in finding that the persons whose names were submitted to the court as a liquidating committee are not competent and qualified to handle and administer the affairs of the bank, and erred as a matter of law in denying the petition.

The respondents urged that the order is not an appealable order;

and in any event the order complained of is justified and sustained upon its merits.

It is the contention of the respondents that owing to the fact the order of the court says the petition is denied "without prejudice to the selection by the depositors of said bank of other qualified persons from whom the court may make selection as required by law," this order is not an appealable order not being "a final order."

Evidently respondents have in mind § 7841 of the Compiled Laws which specifies what orders "may be carried to the Supreme Court" and in subdivision 2 of such section specifies, as an appealable order, "a final order affecting a substantial right made in special proceedings" and in subdivision 4 an order which "involves the merits of the action or some part thereof."

While ordinarily § 7841 determines what are appealable orders, yet we cannot overlook the fact that chapter 96 of the Session Laws of 1913 is a comprehensive law designed to take charge of and regulate the whole system of banking in this State, so far as same can be controlled by the State. It recognizes the possibility of insolvency of banks and is the fruit of years of experience of the people of this State with banking institutions.

The reason for such legislation is well set forth in Baird v. Lefor, 52 N. D. 155, 38 A.L.R. 807, 201 N. W. 997.

Evidently the legislature was impressed with whatever complaints may have been made regarding inefficiency or expense in individual receiverships and determined to provide a comprehensive plan whereby such matters could be under the direct supervision of the courts through a court commissioner or a district judge and a receiver appointed for that purpose. However, recognizing the dissatisfaction, whether justifiable or unjustifiable, with that manner of winding up insolvent banking institutions the legislature made provision for the liquidation of a bank by the depositors themselves and under their control. Owing to the multitudinous matters which arise the district judge is given extensive powers to act in as summary a manner as is consistent with notice and sound judgment, but § 51 (e) says: "Any decision of the Commissioner may be reviewed by the Supreme Court on the motion of any party aggrieved at such time and under such rules as the court may prescribe, etc."

The legislature also provided, § 51 (r) of the act, that in case this court "shall refrain from exercising its original jurisdiction with respect" to the provisions of the act, or any features thereof including the appointment of a court commissioner, this court "shall designate some district judge to hear and try said controversy or controversies. . . . The district judge so designated shall perform all of the duties herein required to be performed by the Court Commissioner. . . . In such case the acts of the District Court shall be subject to review by the Supreme Court in the same manner herein provided for review by the Supreme Court of the acts of the Court Commissioner. . . . The rules of procedure prescribed herein for the Court Commissioner shall govern the procedure before such District Judge. . . ."

This court did not appoint a court commissioner, but designated the Hon. Thos. H. Pugh, one of the district judges of this State to hear and try all such controversies. However, the provision of § 51 (e) already quoted applies to his decisions.

This provision does not limit review to final orders, or to orders involving the merits of the proceedings as that term is ordinarily understood. While the law is too lengthy to set out in full nevertheless it must be conceded that the purpose of the law, so far as review, is concerned, is to give the creditors and parties interested an opportunity to have the decisions of the district judge reviewed, even though they be such as may be termed intermediate or interlocutory.

It is claimed by respondent that this order merely refuses to accept and appoint as a liquidating committee any of the persons named by the depositors; and if another list be furnished, the court will examine the new list and determine whether to appoint or refuse to appoint any one named therein.

The power of the district judge is determined by what he is authorized to do and in such a case it would be perfectly possible for the district judge to refuse to name any person whose name is given in the list subsequently furnished, and so on ad infinitum. Thus it would be difficult for the depositors to get relief even though in all other respects the petition was such as should be granted. An examination of the statute in question shows it is not the purpose of the statute to limit reviews to so-called "appealable orders" only; but to provide for a

review of orders such as the one as is involved here. Therefore, we hold the appellants have a right to have this order reviewed.

The second main issue is whether a review of the whole record shows the petition should have been granted.

The petition was rejected by the judge because of two conclusions upon which the order is based: First, that the administration of this institution by the general receiver is competent, economical and for the best interest of the depositors as compared with the plan of liquidation proposed by the depositors; second, that the business experience of any of the persons suggested as such committee is not such as to satisfy the court of his competency to act as a member of such liquidating committee.

The Act in question contemplates two methods of winding up the affairs of an insolvent bank: One under the administration of the general receiver, who thus may have in charge numerous insolvent institutions at one and the same time; the other under the supervision of a committee chosen by a class of creditors vitally interested in the assets, general depositors, and approved by the district judge.

As between these two methods the law favors the second. Section 51 (v) of the Act says:

"The provisions of this section with reference to the withdrawal of banks from the receivership for the purpose of reorganization and opening, or for the purpose of liquidation, shall be deemed to be highly remedial in character and they contemplate the most expeditious disposal of such matters that is practicable, and shall be liberally construed to accomplish this purpose, and it shall be the duty of the Court and all other public officers having any connection therewith to give such matters preference over ordinary matters to the fullest extent that can be done without undue interference with other official and judicial business."

As said in the case of State v. First State Bank, 52 N. D. 231, 245, 202 N. W. 391, the legislature has the "constitutional authority to regulate the business of banking," and also has the "power to prescribe any mode or manner for the liquidation of such insolvent banking corporations, not expressly forbidden by the constitution." Having enacted such legislation and having expressly declared its purpose,

and its preference as between two modes provided, and having given directions as to how these methods shall be considered, it is clear our decision must be in harmony with that purpose expressed and therefore liquidation by a depositors' committee must be given preference, if possible. If there be doubt in the mind of the district judge such doubt should be resolved in favor of the petitioners. The Statute says: "If no good reason is presented why the application. . . should not be granted, the court *must make its order* appointing three persons from among the names submitted with said plan, to act as joint receivers of said bank in the place and stead of the existing receiver. . . ." Section 51 (u, ¶ 3) of the Act. Thus if there be doubt as to the qualifications of the persons whose names are proposed, the burden to show they are disqualified rests upon those opposing the plan.

It is apparent, therefore, that no matter how honest and efficient may be the administration by the general receiver, yet when the provisions of law authorizing administration by the depositors' committee have been followed it becomes the duty of the district judge merely to determine whether the proposed plan is feasible and the members of the liquidating committee are competent. If it be found that the proposed plan is feasible and these members are competent, then the law favors the administration by the committee. The provisions of the statute must be construed liberally in order to accomplish this purpose.

The court found the proposed plan feasible. It has been approved by the State Examiner and there is nothing to indicate that this differs in any way from other plans proposed and under which insolvent banks have been withdrawn from the general receivership.

The sole objection on the part of the court is as to the "competency of the proposed members of the liquidating committee" and its several members to act in the proposed capacity. In this respect the court finds five of the six named to be "financially worthy and that they are upright and honest men." And as to the other the court found that he had at one time been cashier of said bank but the court was unable to ascertain other qualifications. In finding No. 6 the court seemed to weigh this as against the efficiency of the present receiver, and concludes that the present receiver will give a more satisfactory

administration. However, the purpose of the law is to give the administration to the depositors' committee, if possible under the law. The district court decided that because those proposed as the depositors' committee did not appear to have had experience in managing a bank they would not be able to give "such an active efficient administration as would be requisite and necessary to protect the interests of the depositors, and that if they did not the interests of the depositors of said bank will be exposed to hazards detrimental to such interests."

The record contains a transcript of the examination as to the qualifications of the different parties. The testimony shows: that the first one examined was not a stockholder in the bank nor indebted to the bank; that he is personally acquainted with the bank's debtors; that he would give his personal attention to his duties; that there was nothing in his former business making it difficult to enforce claims against the debtors nor had he any favorites; that he was a successful business man in managing his own farm, and intimately acquainted with land values and the financial standing of the bank's patrons. The testimony regarding the others is to the same effect. There is also testimony regarding the one not present, showing him to be competent, with actual banking experience, especially with reference to this particular bank.

The principal business of the depositors' committee in winding up the affairs of the bank, will be to preserve the assets of the depositors, to dispose of them to the best advantage, and to collect the debts. The record shows the men proposed are honest, competent and with business ability and experience, though not in the management of banks, except as to the former cashier. The law does not require previous banking experience. The record shows the ones suggested are absolutely reliable, honest and capable. They have been successful in managing their own business which consists of the purchase and sale of property; the collection and payment of their own accounts, and general business transactions. They are farmers operating on a large scale, and successful in their work. There is nothing to indicate that any different degree of judgment is required to collect an account due a bank than an account due themselves. The bank is a small institution, whose activity is confined largely to the community in which this proposed committee lives. They will not be required to conduct a bank.

Upon the review of the whole evidence we are constrained to hold that the court should have granted the petition and selected three of the six proposed by the depositors.

The order appealed from is reversed and the district court is directed to select the committee as required by statute.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.